**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **NIKITA SMITH** | **CASE NO.: 6:24-CV-01192** |
| **VS.** | **JUDGE ROBERT R. SUMMERHAYS** |
| **DAVID LEONARD, JR., ET AL** | **MAGISTRATE JUDGE WHITEHURST** |

# <u>MEMORANDUM IN SUPPORT OF</u><br><u>MOTION FOR SUMMARY JUDGMENT</u>

## TABLE OF CONTENTS

I.    FACTUAL BACKGROUND ...........................................................................2

II.    LAW AND ARGUMENT ...............................................................................5

      a.  Summary Judgment Standard and Use of Video Footage ...........................5

      b.  Qualified Immunity....................................................................................6

      c.  The Use of Force Techniques Employed by Detective Leonard Do Not Constitute Excessive Force ................................................................8

      d.  First Amendment Retaliation....................................................................11

      e.  *Monell* Claims..........................................................................................14

      f.  Plaintiff's State Law Claims for Negligent Hiring, Violation of the Louisiana Constitution, Assault and Battery, Negligence and Negligent Infliction of Emotional Distress, Vicarious Liability, and Indemnity Must Also Fail ..........................................................................15

          i.  Negligent Hiring ...........................................................15

          ii.  Violation of the Louisiana Constitution.........................................16

          iii.  Assault and Battery ......................................................................17

          iv.  Negligence and Negligent Infliction of Emotional Distress..........18

          v.  Vicarious Liability .......................................................................19

          vi.  Indemnity ....................................................................................19

III.    CONCLUSION.............................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Alexander v. City of Round Rock*, 854 F.3d 298 (5th Cir. 2017) .......................................11

*Allen v. Cisneros*, 815 F.3d 239 (5th Cir. 2016) ...............................................................11

*Anderson v. Creighton*, 483 U.S. 635 (1987) ....................................................................7

*Bailey v. Ramos*, 125 F.4th 667 (5th Cir. 2025) ............................................................8, 9

*Baumeister v. Plunkett*, 673 So. 2d 994 (La. 1996) ........................................................19

*Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) ................9

*Bulot v. Intracoastal Tubular Servs., Inc.,* 730 So.2d 1012 (La. App. 4 Cir. 1999) ..........17

*Carnaby v. City of Houston*, 636 F.3d 183 (5th Cir.2011) .................................................6

*Carroll v. Ellington*, 800 F.3d 154 (5th Cir. 2015).......................................................7, 12

*Caudle v. Betts,* 512 So.2d 389 (La.1987) ........................................................................17

*Cloud v. Stone*, 993 F.3d 379 (5th Cir. 2021)  .................................................................7

*Club Retro, L.L.C. v. Hilton*, 568 F.3d 181 (5th Cir. 2009)................................................7

*Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446 (5th Cir.2005) ..................................6

*Davidson v. City of Stafford, Tex.*, 848 F.3d 384 (5th Cir. 2017)....................................12

*Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009)  .....................................................8, 10

*Fowler v. Roberts*, 556 So. 2d 1 (La. 1989)....................................................................18

*Galvan v. City of San Antonio*, 435 F. App'x 309 (5th Cir. 2010) ...............................9, 10

*Gobert v. Caldwell*, 463 F.3d 339 (5th Cir. 2006).........................................................6, 7

*Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865 104 L. Ed. 2d 443 (1989)...................9

*Hamilton v. Segue Software, Inc.*, 232 F.3d 473 (5th Cir.2000)........................................6

*Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ................... 7

*Hartman v. Moore*, 547 U.S. 250 (2006) ..................................................... 11

*Heaney v. Roberts*, 846 F.3d 795 (5th Cir. 2017) ........................................... 16

*Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) ................... 13

*Heien v. North Carolina*, 574 U.S. 54, 135 S.Ct. 530, 190 L.Ed.2d 475 (2014) ................ 9

*Henderson v. Harris Cnty.*, 51 F.4th 125 (5th Cir. 2022) .................................... 14

*Hutcheson v. Dallas Cnty.*, 994 F.3d 477 (5th Cir. 2021) ................................... 14

*Johnson v. Glick*, 481 F.2d 1028 (2d Cir. 1973) ............................................. 9

*Keenan v. Tejeda*, 290 F.3d 252 (5th Cir. 2002) ............................................ 11

*Kelley v. Dyson*, 10 So. 3d 283 (La. App. 5 Cir. 2009) ..................................... 15

*Khansari v. City of Houston*, 14 F. Supp. 3d 842 (S.D. Tex. 2014) ........................... 7

*Kyle v. City of New Orleans*, 353 So.2d 969 (La.1977) ..................................... 16

*Lemann v. Essen Lane Daiquiris, Inc.*, 923 So.2d 627 (La. 2006) ........................... 18

*Lock v. Torres¸* 694 Fed App'x 960 (5th Cir. 2017) ......................................... 14

*Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) ..................... 7

*Mathieu v. Imperial Toy Corp.*, 646 So. 2d. 318 (La. 1994) ................................ 18

*Patrick v. Poisso*, 882 So. 2d 686 (La. App. 2 Cir. 2004) ................................. 19

*Pearson v. Callahan*, 555 U.S. 223 (2009) ................................................. 7

*Pena v. City of Rio Grande City*, 879 F.3d 613 (5th Cir. 2018) ............................. 8

*Penn v. St. Tammany Parish Sheriff's Office*, 843 So.2d 1157 (La. App. 1 Cir. 2003) ..... 17

*Peterson v. City of Fort Worth*, 588 F.3d 838 (5th Cir. 2009) ............................. 14

*Poole v. City of Shreveport*, 691 F.3d 624 (5th Cir. 2012) ......................... 6, 7, 9

*Poole v. Russell*, No. CV 14-0611, 2016 WL 6082041 (W.D. La. Oct. 18, 2016)............13

*Rich v. Palko*, 920 F.3d 288 (5th Cir. 2019) ......................................................7

*Romero v. City of Grapevine*, 888 F.3d 170 (5th Cir. 2018) ...............................7

*Ross v. Sheriff of Lafourche Parish,* 479 So.2d 506 (La. App. 1 Cir.1985) .....................17

*Sappington v. Bartee*, 195 F.3d 234 (5th Cir.1999).....................................12, 13

*Saucier v. Katz*, 533 U.S. 194 (2001) .................................................................7, 8

*Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) ...........................6

*Thompson v. Upshur Cty.*, 245 F.3d 447 (5th Cir. 2001) .................................12

*United States v. Levine*, 80 F.3d 129 (5th Cir. 1996)........................................12

## Federal Statutes

42 U.S.C. § 1983.....................................................................................1, 2, 14, 17, 18

Federal Rule of Civil Procedure 56 ............................................................................6

## State Constitution

La. Const. art. I, § 7 ..........................................................................................16

## State Statutes

La. Civil Code, art. 2315...................................................................................18

La. Civil Code, art. 2320....................................................................................19

La. R.S. 14:63.3 ........................................................................................5, 13

La. R.S. 14:103 .........................................................................................5, 13

**MAY IT PLEASE THE COURT:**

Defendants, David Leonard, Jr. ("Detective Leonard") and the City of Morgan City ("Morgan City") (collectively, "defendants"), offer this Memorandum in Support of their Motion for Summary Judgment seeking dismissal of all of plaintiff's claims against them. As urged by the defendants, it is undisputable that the open-handed shove and use of pepper spray on Nikita Smith ("Smith" or "plaintiff") did not constitute excessive force. As is clearly seen in the body cam footage of the incident, the force used—an open-handed shove and then deploying pepper spray, was objectively reasonable and proportional to the resistance and threat Smith and several other persons posed when they outnumbered and aggressively cornered Detective Leonard and two other officers of the Morgan City Police Department while they were attempting to make a lawful arrest.

Since Detective Leonard's use of force was objectively reasonable in light of the circumstances and not excessive, Smith's claims against the defendants under 42 U.S.C. § 1983 for violation of the Fourth Amendment and for Violation of the Louisiana Constitution must fail as a matter of law. Likewise, Smith's state tort claims for assault, battery, negligence, and negligent infliction of emotional distress arising out of the same conduct must also fail as a matter of law.

In the same way the Court can determine that Detective Leonard's actions did not constitute excessive force, it must also determine that the later arrest, prosecution, and conviction of Smith for the charges of entry/remaining where forbidden and disturbing the peace were legally valid and not retaliatory in violation of the First Amendment. As the evidence will show, Smith was ultimately convicted of both charges after a trial before a Judge in the City Court of Morgan City. Therefore, Smith's claims for First Amendment Retaliation must also be dismissed as a matter of law.

In a similar vein, because Detective Leonard did not use excessive force and because Smith was later convicted of the crimes for which he was charged, Smith has no factual basis to support his *Monell* claim for failure to train under 42 U.S.C. § 1983 and related state tort claim for negligent hiring. Likewise, because all the underlying claims against Detective Leonard fail, Smith's claims for vicarious liability and indemnity against the City of Morgan City must also fail.  Accordingly, Smith's claims for failure to train under *Monell*, negligent hiring, vicarious liability, and indemnity must also be dismissed as a matter of law.

## I.     FACTUAL BACKGROUND.

This matter arises out of an incident that occurred on September 3, 2023, involving plaintiff, Nikita Smith.[1] Specifically, and pertinent to this motion, on that date, at around 2:00 a.m., a large crowd, including Smith, gathered at the Waffle House and adjacent Circle K parking lot in Morgan City, Louisiana after the conclusion of an "All White Party" at the Patterson Civic Center.[2] At that time, the Circle K had closed its doors, but the staff were still inside.[3] Despite the closure, the police received reports that the crowd was throwing objects at the store and Detective Leonard saw people pulling on the store's doors.[4] As a result, Morgan City Police Department dispatch received a call from the clerk at the Circle K requesting officers to respond to the situation.[5]

Upon arrival, Officers of the Morgan City Police Department, Berwick Police Department, and St. Mary Parish Sheriff's Office (hereinafter collectively referred to as "Officers") observed

---

[1] R. Doc. 1, ¶ 1.

[2] Affidavit of Detective Joseph A Coleman Jr. For Arrest Warrant of Nikita Smith City Court Record of *State of Louisiana v. Nikita Smith*, attached as Exhibit "A." The Affidavit was identified and authenticated at pp. 48-49 of Sgt. Joseph A. Coleman, Jr.'s deposition, attached *infra* as Exhibit "E".

[3] *See* Deposition of David Leonard, Jr. at p. 123, 129, attached as Exhibit "B."

[4] Exhibit "A" at p. 2. *See also* Deposition of Zeke Sampey at pp. 26-27, attached as Exhibit "C"; Deposition of David Leonard, Jr. at pp. 128-129, attached as Exhibit "B."

[5] Exhibit "A" at p. 2.

multiple people blocking gas pumps and a large unruly crowd loitering on the property.[6] Officers then made their way into the crowd and ordered the crowd to disperse and leave the Circle K parking lot.[7]

While there were other disturbances, including an arrest of an unruly subject,[8] a disturbance between several females began, and officers attempted to detain one of the females, but she pulled away and broke free.[9] Officer Ricardo Aguilar chased her across the parking lot and began to place her into handcuffs.[10] Detective Leonard and Officer Sampey ran over to assist.[11] Once Detective Leonard and Officer Sampey got there, a black female wearing all white began pulling on the subject Officer Aguilar was arresting to try and free her.[12] In an attempt to stop the interference with a lawful arrest, Detective Leonard shoved the female away, which allowed Officer Aguilar to exit the immediate area with the subject.[13] Due to the shove and her shoe breaking, the female fell to the ground.[14]

As that happened, several subjects aggressively ran up to the group of officers and began yelling and threatening them.[15] One subject, later identified as plaintiff Nikita Smith, approached Detective Leonard aggressively, balling up his fists, bowing his arms and yelling and pointing at

---

[6] Exhibit "A" at p. 2. *See also* Deposition of David Leonard, Jr. at p. 138, attached as Exhibit "B."
[7] Exhibit "A" at p. 2. *See also* Deposition of David Leonard, Jr. at pp. 124-125, attached as Exhibit "B"; Deposition of Blake Giroir at pp. 32-33, attached as Exhibit "D".
[8] Exhibit "A" at p. 2
[9] *Id.*
[10] *See* video attached to Deposition of David Leonard, Jr. as Exhibit 5, attached hereto as Exhibit "B". The video (Exhibit 5) was introduced and authenticated at p. 161, of the Deposition of David Leonard, Jr., attached as Exhibit "B".
[11] *Id*; *see also* Exhibit "A" at p. 2.
[12] *See* video attached to Deposition of David Leonard, Jr. as Exhibit 5, attached hereto as Exhibit "B"; see also Deposition of David Leonard, Jr., p. 132, attached hereto as Exhibit "B".
[13] *Id.*
[14] *Id.*
[15] *Id. See also* Deposition of David Leonard, Jr. at pp. 132-133, attached as Exhibit "B."

Detective Leonard.[16] Officers drew their department issued tasers and told the subjects to back away.[17] The crowd was advised several times to back away, but they failed to do so.[18] Rather than deploy his taser, Detective Leonard used an open-hand shove technique, to push Nikita Smith back to create space between himself and Smith.[19]  When the crowd (including Smith, who was still yelling and now beating his chest) approached again, Detective Leonard utilized his department issued Defense Technology MK-3 ("pepper spray") and sprayed Smith (as well as others in the approaching group) and shoved him back again.[20] Once spray was deployed a large portion of the crowd left the area.[21] After approximately 20-30 minutes, the entire parking lot was emptied of the crowd.[22]

On September 9, 2023, Detective Joseph A. Coleman, Jr. obtained surveillance footage of the incident.[23] He also reviewed body cam footage from officers present at the scene.[24]  Detective

---

[16] *Id. See also video* Deposition of David Leonard, Jr. at pp. 169 – 170, attached as Exhibit "B."

[17] *Id.*

[18] *Id. See also* Deposition of David Leonard, Jr. at pp. 168 – 173, attached as Exhibit "B."

[19] *See* videos attached as Exhibits 4 and 5 to deposition of David Leonard, Jr., which is attached hereto as Exhibit "B".  The video (Exhibit 4) was introduced and authenticated at pp. 149, 160-161, and the second video (Exhibit 5) was introduced and authenticated at p. 161 of the Deposition of David Leonard, Jr., attached as Exhibit "B". *See also* Deposition of David Leonard, Jr. at pp. 154, 158-159, attached hereto as Exhibit "B".

[20] *Id.  See also* Exhibit "A" at p. 2; Deposition of David Leonard, Jr. at pp 168 – 173, attached as Exhibit "B".

[21] *See* videos attached as Exhibits 4 and 5 to deposition of David Leonard, Jr., which is attached hereto as Exhibit "B".  The video (Exhibit 4) was introduced and authenticated at pp. 149, 160-161, and the second video (Exhibit 5) was introduced and authenticated at p. 161 of the Deposition of David Leonard, Jr., attached as Exhibit "B".

[22] Exhibit "A" at p. 2.

[23] Exhibit "A" at p. 2. *See also*, Deposition of Sergeant Joseph A. Coleman, Jr. at pp. 23-24, attached as Exhibit "E."

[24] *Id.*

Coleman was able to identify Nikita Smith as one of the male subjects that ran up to Detective Leonard in an aggressive manner through social media posts regarding the incident.[25]

Based on the above information, Detective Coleman signed an affidavit requesting an arrest warrant for the arrest of Nikita Smith for the charges of La R.S. 14:63.3 Remaining After Forbidden, and La R.S. 14:103 Disturbing the Peace on November 28, 2023.[26] After reviewing Detective Coleman's affidavit, Judge Ed Leonard of the Morgan City Municipal Court issued a warrant for the arrest of Nikita Smith for violations of La. R.S. § 14:63.3 Remaining After Forbidden, and La. R.S. § 14:103 Disturbing the Peace on November 28, 2023.[27] Nikita Smith turned himself in and was booked for the above charges on March 27, 2024.[28] Detective Leonard was not involved in trying to determine the identities of the persons involved in the incident, and Sgt. Coleman was not aware that Smith or anyone else had filed a complaint against Detective Leonard at the time he filed his Affidavit for the arrest warrants.[29]  A trial on both charges took place on August 29, 2024.[30] After trial, Judge Kim P. Stansbury, of the City Court of Morgan City, found Smith guilty of both charges and sentenced him to serve ten (10) days in jail – to be served on weekends –  and pay a fine totaling $200.00 plus court costs.[31]

## II.    LAW AND ARGUMENT.

### a.    Summary Judgment Standard and Use of Video Footage.

---

[25] Exhibit "A" at p. 3. *See also*, Deposition of Sergeant Joseph A. Coleman, Jr. at pp. 26-27, 52-53, attached as Exhibit "E."

[26] Exhibit "A" at p. 3. *See also*, Deposition of Sergeant Joseph A. Coleman, Jr. at pp. 48 – 49, attached as Exhibit "E."

[27] Arrest Warrant for Nikita Smith, attached as Exhibit "F."

[28] Morgan City Police Department Booking Sheet, attached as Exhibit "G."

[29] *See* Deposition of Sergeant Joseph A. Coleman, Jr. at pp. 52-53, attached as Exhibit "E".  *See also* Deposition of David Leonard, Jr. at p. 196, attached as Exhibit "B".

[30] Case Minute History for Case No. 24-2192, attached as Exhibit "H".

[31] *Id*.  *See also*, Response to Request for Admission at p. 17 of Response to Combined Discovery Requests, attached as Exhibit "I"

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012), *citing Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir.2000). A fact issue is "material" if its resolution could affect the outcome of the action. *Id.* When reviewing summary judgment decisions, we construe all facts and inferences in the light most favorable to [], the nonmoving party. *Poole*, 691 F.3d at 627, *citing Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir.2005).

"Although we review evidence in the light most favorable to the nonmoving party, we assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir.2011). "A court of appeals need not rely on the plaintiff's description of the facts where the record discredits that description but should instead consider 'the facts in the light depicted by the videotape.'" *Id.* (quoting *Scott v. Harris*, 550 U.S. 372, 381, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)).

In *Scott*, the U.S. Supreme Court independently reviewed and used video evidence from a police vehicle camera not only to reverse an order denying summary judgment but to grant summary judgment to the defendant officers on qualified immunity grounds. *Scott*, 127 S.Ct. at 1778. The Court ruled that what was captured on video proved that the plaintiff's version of events was incredible, and that the officer's conduct was objectively reasonable as a matter of law. *Id.*

**b.  Qualified Immunity.**

"Qualified immunity provides government officials performing discretionary functions with a shield against civil damages liability, so long as their actions could reasonably have been

thought consistent with the rights they are alleged to have violated." *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006) (citing *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation,' . . . it is effectively lost if a case is erroneously permitted to go to trial." *Khansari v. City of Houston*, 14 F. Supp. 3d 842, 853 (S.D. Tex. 2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (citation omitted), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009)). "Qualified immunity shields from liability 'all but the plainly incompetent or those who knowingly violate the law.' Accordingly, 'qualified immunity represents the norm,' and courts should deny a defendant immunity only in rare circumstances." *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018). *Romero*, 888 F.3d at 176 (first quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), and then quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 807, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The plaintiff has the burden to negate a properly raised defense of qualified immunity. *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

"When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015) (quoting *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009)). To successfully refute the qualified immunity defense, Plaintiff "must point to summary judgment evidence" showing both "(1) that [the officers] violated a federal statutory or constitutional right and (2) that the unlawfulness of the conduct was 'clearly established at the time.' " *Cloud v. Stone*, 993 F.3d 379, 383 (5th Cir. 2021) (*quoting Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019) (citation omitted)).

The Supreme Court has developed a framework for analyzing qualified immunity cases where not all disputes of material fact will defeat a summary judgment:

> Where the defendant seeks qualified immunity, a ruling on the issue should be made early in the proceedings . . . The privilege is an immunity from suit rather than a mere defense to liability, and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. It follows that the summary judgment standard is less rigid where the defendant pleads qualified immunity.

*Saucier v. Katz*, 533 U.S. 194 (2001) (citations omitted). Applying these principles, the Court determined that denying "summary judgment any time a material issue of fact remains on the excessive force claim could undermine the goal of qualified immunity . . ." *Id*. at 202. Thus, it is not necessary to resolve all disputes of material fact to render summary judgment.

The applicability of qualified immunity in this case can be resolved on the first prong as defendants will demonstrate that there was no violation of Plaintiff's federal constitutional or statutory rights. Defendants will discuss the applicable law on each of Plaintiff's federal claims below and thus need not repeat those principles here.

### c. <u>The Use of Force Techniques Employed by Detective Leonard Do Not Constitute Excessive Force.</u>

An officer's use of force is excessive under the Fourth Amendment if plaintiff can show: "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Bailey v. Ramos*, 125 F.4th 667, 680 (5th Cir. 2025), *citing Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (*per curiam*). Courts merge the second and third elements of the above inquiry "into a single objective-reasonableness inquiry." *Bailey*, 125 F.4th at 680, *citing Pena v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018).

> To assess reasonableness, we consider three factors that the Supreme Court outlined in *Graham v. Connor*: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight."

*Bailey*, 125 F.4th at 680.

"As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865. "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Id.* at 396, 109 S.Ct. 1865 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" *Heien v. North Carolina*, 574 U.S. 54, 60–61, 135 S.Ct. 530, 190 L.Ed.2d 475 (2014) (quoting *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). A use of force is more likely to be reasonable when officers use "measured and ascending" actions that correspond to a suspect's level of compliance or resistance. *See, e.g., Poole*, 691 F.3d at 629; *Galvan v. City of San Antonio*, 435 F. App'x 309, 311 (5th Cir. 2010) (finding use of force reasonable when it involved "measured and ascending responses" to a plaintiff's noncompliance).

The video footage of Detective Leonard's interaction with Nikita Smith clearly shows that Detective Leonard's use of force on Smith – first, pushing Mr. Smith backwards when facing

multiple potential threats; and second, deploying pepper spray after Smith ignored Detective Leonard's verbal commands to back up and instead continued to aggressively approach Detective Leonard while slapping his chest and balling his fists up – was objectively reasonable in light of the facts and circumstances confronting Detective Leonard.[32] Viewed objectively, Detective Leonard responded with "measured and ascending" actions that corresponded to escalating verbal and physical resistance from Smith, individually, and the crowd as a whole.[33]

In *Galvan*, this court concluded that the force used by officers was reasonable where police "were confronted with a rapidly evolving, volatile situation"; "reacted with measured and ascending responses—verbal warnings, pepper spray, hand- and arm-manipulation techniques, and then the use of a Taser"; and "did not use force until [the plaintiff's husband] attacked [an officer]." 435 Fed.Appx. at 311. Like *Galvan*, this situation was "tense, uncertain, and rapidly evolving," and Detective Leonard's decision to first shove and then pepper spray Smith was objectively reasonable in light of the escalating circumstances.[34] Furthermore, Smith refused Detective's Leonard's verbal command to stay back and continued to aggressively approach Detective Leonard; therefore, he posed an "immediate threat to the safety of the officers" and "actively resist[ed]" the officers' instructions, and the use of force was not "clearly excessive."[35] *See Deville*, 567 F.3d at 167.

---

[32] *See* Affidavit of C. Scott Courrege, at ¶ 9, attached as Exhibit "J". *See also*, videos attached as Exhibits 4 and 5 to deposition of David Leonard, Jr., which is attached hereto as Exhibit "B". The video (Exhibit 4) was introduced and authenticated at pp. 149, 160-161, and the second video (Exhibit 5) was introduced and authenticated at p. 161 of the Deposition of David Leonard, Jr., attached as Exhibit "B".
[33] *Id*.
[34] *Id*.
[35] *See* Affidavit of C. Scott Courrege, at ¶ 9, attached as Exhibit "J". *See also*, videos attached as Exhibits 4 and 5 to deposition of David Leonard, Jr., which is attached hereto as Exhibit "B". The video (Exhibit 4) was introduced and authenticated at pp. 149, 160-161, and the second video (Exhibit 5) was introduced and authenticated at p. 161 of the Deposition of David Leonard, Jr., attached as Exhibit "B".

For all of the above reasons, the force used by Detective Leonard was not excessive. His use of force clearly constituted measured and ascending responses to Smith's noncompliance and the crowd's increasing hostility. Therefore, Smith cannot support his Fourth Amendment excessive force claim against Detective Leonard, Detective Leonard is entitled to qualified immunity, and summary judgment in his favor is warranted.

### d.  <u>First Amendment Retaliation.</u>

"[T]o prevail on a First Amendment retaliation claim, Plaintiff must demonstrate that (1) he was engaged in constitutionally protected activity, (2) the officers' action caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the officers' adverse actions were substantially motivated against Plaintiff's exercise of constitutionally protected conduct." *Alexander v. City of Round Rock*, 854 F.3d 298, 308 (5th Cir. 2017) (citation omitted). "However, a retaliation claim is only applicable 'when non-retaliatory grounds are in fact insufficient to provoke the adverse consequences.'" *Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). Consequently, "even where a citizen believes that he has been subject to a retaliatory detention or arrest, if there was reasonable suspicion or probable cause for an officer to seize the citizen, 'the objectives of law enforcement take primacy over the citizen's right to avoid retaliation.'" *Id.* at 244–45 (quoting *Keenan v. Tejeda*, 290 F.3d 252, 261–62 (5th Cir. 2002)).

In this case, plaintiff is not able to establish the third element of a claim for First Amendment retaliation. Detective Leonard testified that he was not involved in trying to determine the identities of the persons involved in the incident, and Sgt. Coleman testified that he was not aware that Smith or anyone else had filed a complaint against Detective Leonard at the time he

11

filed his Affidavit for the arrest warrants.[36]   Sgt. Coleman's investigatory techniques were reasonable and consistent with generally accepted police practices.[37]  Plaintiff has no evidence to controvert these facts.  Therefore, his claim for First Amendment retaliation fails.

The above notwithstanding, where a claim for retaliatory arrest is asserted, police officers are "entitled to qualified immunity unless there was no actual probable cause for the arrest *and* the officers were objectively unreasonable in believing there was probable cause for the arrest." *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 391 (5th Cir. 2017), *as revised* (Mar. 31, 2017) (citations omitted). "A government official's acts are not objectively unreasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the plaintiff's rights." *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015) (citing *Thompson v. Upshur Cty.*, 245 F.3d 447, 457 (5th Cir. 2001).  "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge *at the moment of arrest* are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996).

In this case, plaintiff was arrested pursuant to a warrant issued by Judge Leonard based on probable cause articulated by Sgt. Coleman in his Affidavit.[38]  Furthermore, plaintiff was convicted of the charges set forth in the warrant (Remaining Where Forbidden and Disturbing the Peace).[39]  Based on the foregoing, there exists no fact to dispute that probable cause existed to arrest Nikita Smith for remaining where forbidden and disturbing the peace because the conviction

---

[36] *See* Deposition of Sergeant Joseph A. Coleman, Jr. at pp. 52-53, attached as Exhibit "E".  *See also* Deposition of David Leonard, Jr. at p. 196, attached as Exhibit "B".
[37] *See* Affidavit of C. Scott Courrege, at ¶ 9, attached as Exhibit "J".
[38] *See* Exhibits "A" and "F".
[39] *See* Exhibit "H".

necessarily implies that there was probable cause for the arrest. *See Sappington v. Bartee*, 195 F.3d 234, 237 (5th Cir.1999). On this basis also, Smith's First Amendment retaliation claims must fail.

Lastly, plaintiff's First Amendment retaliation claims are *Heck*-barred. In *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . ." *Heck* at 486–87, 114 S.Ct. 2364. The *Heck* rule was formulated in deference to the principle that "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Id.* at 486, 114 S.Ct. 2364.

The plaintiff's claims for First Amendment Retaliation necessarily fail by application of the *Heck* principle. As previously stated, Smith was found guilty of Entry on or Remaining in Places or Land After Being Forbidden under La. R.S. § 14:63.3 and Disturbing the Peace under La. R.S. § 14:103. "Where a plaintiff was arrested for crimes of which he was ultimately convicted, *Heck* bars recovery for free speech retaliation because the conviction necessarily implies that there was probable cause for the arrest." *Poole v. Russell*, No. CV 14-0611, 2016 WL 6082041, at *4 (W.D. La. Oct. 18, 2016) (citations omitted). Since a lack of probable cause is a requisite for his success on his First Amendment retaliation claim, but the lack of such probable cause would invalidate his convictions for Remaining Where Forbidden and Disturbing the Peace, Smith's claim is barred by *Heck*, as was plaintiff's similar claim in *Poole*, *supra*.

13

Therefore, Plaintiff cannot support his First Amendment Retaliation claim and summary judgment in favor of defendants is warranted.

### e. *Monell* **Claims.**

To establish *Monell* liability, a plaintiff must show that an official policy promulgated by a municipal policymaker was the moving force behind the violation of a constitutional right. *Henderson v. Harris Cnty.*, 51 F.4th 125, 130 (5th Cir. 2022), *citing Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). A "failure-to-train action is a type of *Monell* claim." *Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 482 (5th Cir. 2021). To establish *Monell* liability on a failure-to-train theory, a plaintiff must prove that: "(1) the city failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Id.*

Plaintiff's *Monell* claims must fail because they cannot satisfy the threshold requirement that there was a constitutional violation. A municipality cannot be held liable under § 1983 if there is no constitutional violation. *E.g.*, *Lock v. Torres*¸ 694 Fed App'x 960, 965 (5th Cir. 2017) (per curiam)("The fact that an official policy may have led to police misconduct is not the test.")("Municipal liability will not attach if the complaining party 'has suffered no constitutional injury' at the hands of a municipal employee.") (citation omitted). As explained above, Detective Leonard used reasonable force during the incident in light of the circumstances. As also explained above, plaintiff's First Amendment Retaliation claims must also fail under the *Heck* principle and because probable cause existed for his arrest. In the absence of a constitutional violation, there can

be no municipal liability. Therefore, Plaintiff cannot support his *Monell* and failure to train claims against the City of Morgan City and summary judgment in their favor is warranted.

>  **f.  Plaintiff's State Law Claims for Negligent Hiring, Violation of the Louisiana Constitution, Assault and Battery, Negligence and Negligent Infliction of Emotional Distress, Vicarious Liability, and Indemnity Must Also Fail.**

For the same reasons that plaintiff's federal claims fail, so too must Plaintiff's state law claims for negligent hiring, violation of the Louisiana Constitution, Negligence and Negligent Infliction of Emotional Distress, Assault and Battery, Vicarious Liability, and Indemnity.

>  **i.  Negligent Hiring .**

"A claim against an employer for the torts of an employee based on the employer's alleged direct negligence in hiring, retaining, or supervising the employee generally is governed by the same duty-risk analysis" used in Louisiana for negligence claims. *Kelley v. Dyson*, 10 So. 3d 283, 287 (La. App. 5 Cir. 2009). The elements of liability in a Louisiana negligence case are: (1) duty; (2) breach of duty; (3) cause-in-fact; (4) scope of liability or scope of protection; and (5) damages. *Id.*

Defendant reasserts and reavers the arguments discussing plaintiff's federal constitutional and state law claims in full as if copied herein *in extensio*. For the same reasons espoused in the section discussing why plaintiff's *Monell* claims must fail, so too must plaintiff's state law claims for negligent hiring also fail. Namely, the plaintiff cannot meet the threshold requirement that Detective Leonard failed to act objectively reasonably in light of the circumstances. Put another way, the plaintiff cannot establish any underlying fault on Detective Leonard for any Federal or State causes of action for which a claim of negligent hiring can attach. Therefore, the plaintiff cannot satisfy the breach of duty and cause-in-fact elements of its state law claim for negligent

hiring, and summary judgment in favor of the City of Morgan City dismissing Plaintiff's claims for negligent hiring is warranted as a matter of law.

### ii. Violation of the Louisiana Constitution.

Under the Louisiana Constitution, "[n]o law shall curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments on any subject, but is responsible for abuse of freedom." La. Const. art. I, § 7. The Fifth Circuit has recognized that "Louisiana's constitutional protection of free speech mirrors that of the First Amendment, so separate determinations of the state and federal claims are unnecessary." *Heaney v. Roberts*, 846 F.3d 795, 802 n.2 (5th Cir. 2017). Accordingly, for the same reasons the plaintiff's First Amendment Retaliation claims must fail, so too must plaintiff's claims for violations of the Louisiana Constitution also fail.

Likewise, Louisiana's excessive force tort mirrors its federal constitutional counterpart. "The use of force when necessary to make an arrest is a legitimate police function. But if the officers use unreasonable or excessive force, they and their employer are liable for any injuries which result." *Kyle v. City of New Orleans*, 353 So.2d 969, 972 (La.1977). "Whether the force used is reasonable depends upon the totality of the facts and circumstances in each case," and factors to consider are: (1) the known character of the arrestee, (2) the risks and dangers faced by the officers, (3) the nature of the offense involved, (4) the chance of the arrestee's escape if the particular means are not employed, (5) the existence of alternative methods of arrest, (6) the physical size, strength, and weaponry of the officers compared to the arrestee, and (7) the exigencies of the moment. *Id.* at 973. These considerations are sufficiently similar to the *Graham* factors that the court's decision on this claim mirrors plaintiff's § 1983 excessive force claim, and

therefore warrant the same analysis and conclusion that Detective Leonard's use of force was not excessive, but rather, objectively reasonable in light of the circumstances. *See Penn v. St. Tammany Parish Sheriff's Office*, 843 So.2d 1157, 1159–60 (La.Ct.App.2003).

Applying those factors here, and for the same reasons espoused in the section discussing why plaintiff's claims under 42 U.S.C. § 1983 for Violations of the Fourth Amendment must fail, Detective Leonard did not use excessive force. Defendant reasserts and reavers the argument contained in the section discussing why plaintiff's claims under 42 U.S.C § 1983 for Violations of the Fourth Amendment must fail in full as if copied herein *in extenso*. Therefore, summary judgment in favor of the Defendants dismissing Plaintiff's claims for Violation of the Louisiana Constitution is warranted as a matter of law.

### iii.  <u>Assault and Battery.</u>

Under Louisiana law, a battery is a "harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact." *Caudle v. Betts,* 512 So.2d 389, 391 (La.1987).  "[A]ssault is the imminent threat of a battery." *Bulot v. Intracoastal Tubular Servs., Inc.,* 98–2105, p. 13 (La.App. 4 Cir. 2/24/99); 730 So.2d 1012, 1018, *abrogated on other grounds by Bulot v. Intracoastal Tubular Servs., Inc.,* 2004–1376 (La.App. 4 Cir. 11/3/04); 888 So.2d 1017."Under ordinary circumstances the use of reasonable force to restrain an arrestee shields a police officer from liability for battery." *Ross v. Sheriff of Lafourche Parish,* 479 So.2d 506, 511 (La. App. 1 Cir.1985). But "[e]xcessive force transforms ordinarily protected force into an actionable battery." *Penn v. St. Tammany Parish Sheriff's Office,* 2002–0893, p. 7 (La.App. 1 Cir. 4/2/03); 843 So.2d 1157, 1161. "

17

Defendant reasserts and reavers the argument contained in the section discussing why plaintiff's claims under 42 U.S.C § 1983 for Violations of the Fourth Amendment and Violations of the Louisiana Constitution must fail in full as if copied herein *in extenso*. As previously explained, Detective Leonard's use of force was not excessive, but rather, objectively reasonable in light of the circumstances. Therefore, Plaintiff cannot support his claims for assault and battery against Detective Leonard, and summary judgment in his favor is warranted.

### iv.  Negligence and Negligent Infliction of Emotional Distress.

"The duty-risk analysis is the standard negligence analysis employed in determining whether to impose liability under" Article 2315. *Lemann v. Essen Lane Daiquiris, Inc.*, 2005-1095 (La. 3/10/06), 923 So.2d 627, 632–33 (citing *Mathieu v. Imperial Toy Corp.*, 94-0952 (La. 11/30/94), 646 So. 2d. 318, 321). Under this analysis, a plaintiff must prove five separate elements:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element).

*Id.* at 633 (citing *Fowler v. Roberts*, 556 So. 2d 1, 4 (La. 1989), *reh'g granted on other grounds and original opinion reinstated as supplemented*, 556 So. 2d at 13 (La. 1990)). "A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability." *Id.* (citing *Mathieu*, 646 So. 2d at 326).

For the reasons previously explained herein, the plaintiff cannot establish any negligent act on the part of Detective Leonard. Namely, Detective Leonard acted objectively reasonable in light of the circumstances. As such, plaintiff cannot satisfy the breach element necessary to succeed on

his negligence and negligent infliction of emotional distress claims against Detective Leonard. Therefore, summary judgment in favor of Detective Leonard dismissing Plaintiff's negligence and negligent infliction of emotional distress claims is warranted as a matter of law.

### v.  Vicarious Liability.

An employer may be held vicariously liable for the tortious acts of its employees only when they are performed "in the exercise of the functions in which they are employed." La. Civ. Code art. 2320. Vicarious liability attaches only "if the employee is acting within the ambit of his assigned duties and also in furtherance of his employer's objective." *Baumeister v. Plunkett*, 673 So. 2d 994, 996 (La. 1996) (quotations omitted). In other words, "an employee's conduct is within the course and scope of his employment if the conduct is ... activated at least in part by a purpose to serve the employer." *Patrick v. Poisso*, 882 So. 2d 686, 691 (La. App. 2 Cir. 2004).

For all of the reasons previously explained herein, plaintiff cannot show any tortious acts were committed by Detective Leonard or any other person acting in the course and scope of their employment for the City of Morgan City. Accordingly, there can be no vicarious liability imposed on the City of Morgan City, and summary judgment in favor of the City of Morgan City dismissing Plaintiff's claims for vicarious liability is warranted as a matter of law.

### vi.  Indemnity.

Plaintiff's claims for indemnity against the City of Morgan City relies on obtaining a successful tort judgment for compensatory damages against either Detective Leonard or the Morgan City Police Department. (See, Rec. Doc 1, at ¶¶ 111 – 115). Therefore, the success of plaintiff's indemnity claims against the City of Morgan City rests entirely on establishing an underlying Federal Constitutional or Louisiana state tort occurred for which compensatory

damages to be paid by the City of Morgan City is owed. For all the reasons previously explained herein, each of plaintiff's causes of action against Detective Leonard and the Morgan City Police Department fail as a matter of law. For this reason, the plaintiff's claim for indemnity against the City of Morgan City must also fail. Therefore, summary judgment in favor of the City of Morgan City dismissing the plaintiff's claim for indemnity is warranted as a matter of law.

## III.    CONCLUSION.

At the Summary Judgment stage of the litigation, a Court may determine whether the actions of a police officer are objectively reasonable and not excessive.  In light of the video evidence, this case is ripe for summary judgment, and the Court should grant defendants' motion. As this is the case, most of plaintiff's claims fail and should be dismissed.

The remaining claim, for First Amendment Retaliation also fails, as plaintiff admittedly was convicted for Disturbing the Peace and Remaining Where Forbidden.  The allegedly retaliatory arrest was impliedly based on probable cause, since plaintiff was convicted of the charges.  Therefore, the First Amendment retaliation claim fails.  Lastly, the First Amendment retaliation claim is *Heck*-barred, because it would necessarily call into question the legality of his criminal conviction.

**SIGNATURE BLOCK ON NEXT PAGE**

Respectfully submitted,

**GAUDRY, RANSON,
HIGGINS & GREMILLION, L.L.C.**

/s/ John J. Danna, Jr.

_____
WADE A. LANGLOIS, III (#17681)
JOHN J. DANNA, JR. (#28894)
PATRICK T. DUNCAN (#38727)
401 Whitney Avenue, Suite 500
Gretna, LA 70056
Telephone: (504) 362-2466
Fax:     (504) 362-5938
Email:   wlanglois@grhg.net
             jdanna@grhg.net
             pduncan@grhg.net

**AND**

ELIZABETH S. RAMBIN (#17149)
2223 Quail Run Drive, Suite C-2
Baton Rouge, Louisiana 70808
Telephone: 225-663-6101
Fax: 225-663-6102
Email: erambin@grhg.net

*Counsel for Defendants,
David Leonard, Jr. and the City of Morgan City*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing was filed electronically with the Clerk of Court using the CM/ECF system on this 20th day of January, 2026.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

/s/ John J. Danna, Jr.

_____
JOHN J. DANNA, JR.